[No. 1848.]

## CHARLEY JETTON *v.* THE STATE.

PRACTICE — NEW TRIAL.— See the opinion *in extenso*, and the statement of the case, for circumstances under which the trial court should have awarded a new trial because of its refusal of a continuance.

APPEAL from the District Court of Ellis. Tried below before the Hon. G. N. Aldredge.

The conviction in this case was for the theft of a horse, the property of Burr Collins, in Ellis county, Texas, on the 2d day of September, 1883. A term of five years in the penitentiary was the penalty assessed against the appellant.

Burr Collins was the first witness for the State. He testified that he attended church on the night of Sunday, September 2, 1883, returning home about 10 o'clock, when he hung his saddle up in the barn and turned his horse in the pasture. His horse was a two-year-old bay stallion, with roached mane, and was branded with the picture of a gaiter on the left shoulder. His left hind foot was white. This horse was missing from the pasture next morning. Witness gave no one his consent to take him. Witness unsuccessfully searched the pasture and the range for his horse. He then went to Mr. Hesse's, but did not, on that visit, see Willie Hesse. Witness then went to Mr. Jetton's and inquired for Willie Hesse. He did not see Charley Jetton, the defendant. He then went to Waxahatchie, meeting William Jetton on the way, of whom he inquired for Willie Hesse, saying that he believed Willie Hesse had stolen his horse. Not finding the horse in Waxahatchie, he informed the sheriff of his loss, had printed a hundred cards describing the horse, and returned home that night. This was on Monday, September 3. Next day witness went to Corsicana in search of his horse. He heard of his horse but did not find him, and returned home that night. Next day witness went to Ennis in search of his horse, and again looked through the range. Witness did not see his horse again until Wednesday of the next week, when he found him in the pasture. Witness could not say when nor by whom the horse was returned to the pasture. The horse's head showed halter marks. This horse and a sorrel mare belonging to the mother of the witness were taken from and returned to the pasture together. They were returned to the pasture after the arrest of the defendant.

Mr. Marcia was the next witness for the State. He testified that he lived about ten miles from the defendant's house, between that point and Corsicana, though east of the direct road between the two points about three miles. On Monday morning, September 3, 1883, a young man — the witness believed the defendant — came to witness's house and asked the way to Corsicana and if it was not estray sale day in that town. He had two horses, a bay and a sorrel, with him. According to the recollection of the witness, the sorrel had a roached and the bay a full mane. Witness noticed no brands. He saw a man waiting on horseback about two hundred yards off on the prairie. Witness next saw the defendant some

days afterward, in the Ennis calaboose. He had never seen him prior to the said September 3.

R. E. Mullins testified, for the State, that he lived in the town of Corsicana. He saw the defendant and Willie Hesse in Corsicana on Monday, September 3, 1883. They had three horses with them. One was a bay and one a sorrel. The bay was a young stallion, branded with a gaiter. Willie Hesse offered to sell the witness the bay horse, first for fifty and then for forty, and then for thirty dollars. Witness offered him $20 for that horse. Witness then went to the city marshal and asked him if it would be safe to buy a horse from a minor. The marshal replied that if the minor was in the habit of trading horses it would be all right. Witness then saw his brother, who wanted to buy a pony for his little boy, and told him that he had found a suitable animal. The defendant did not claim the horses. He said that they belonged to Willie Hesse; that they were presents to Willie from his father, and were all right. Witness thereupon paid Willie Hesse $20 for the pony, and took a bill of sale witnessed by the defendant under the name of John Davis. The horse was put in a pasture, and a few days after was claimed and proved away. The father of Willie Hesse came after the horse and refunded witness the purchase money. The witness had never seen either the defendant or Willie Hesse prior to September 3, 1883. Witness did not tell Joseph Hesse, in the presence of William Jetton, in Waxahatchie, at the September term of court, that he could not recognize the defendant. Witness has never failed to recognize the defendant. Defendant signed the bill of sale as a witness, using the name "John Davis." He wrote so badly that, with his permission, witness wrote the name "John Davis" under his scrawl. Witness saw the defendant at the September term of court, 1883, and the February term, 1884.

R. G. Phillips testified, for the State, that he was clerk of the district court of Ellis county, and as such swore the defendant to the following application for attachment for witnesses:

"*To the Clerk of the District Court of Ellis County:* In the case of *The State of Texas* v. *Charles Jetton*, charged with theft, you will please issue an attachment for the following named witness, residing in the county below set out, the testimony of the said witness being material to the defendant: John Davis, residing in Navarro county, Texas. By the testimony of John Davis the fact is expected to be proved that, on the day after said property was taken, of which this defendant stands charged, the said witness went with one William Hesse with the horses or horse alleged to have been stolen,

to Corsicana, and that the defendant was not present, but that said Hesse and witness were the only persons who had anything to do with the said horses. That Hesse could not write and asked said witness to sell the horse and make the bill of sale, and witness the same; which the witness did. That the witness knew nothing of said horses being stolen, and that the defendant had nothing to do with the said theft.

His

"CHARLES + JETTON."

mark.

The defendant was not under arrest when the witness qualified him to the truth of this application.

The State, at this juncture, introduced the following bill of sale:

His

" Know all men by these presents that I, Willie + Hesse, of Ellis

mark.

county, Texas, for and in consideration of the sum of $20 to me in hand paid by W. R. Mullins, of Corsicana, Texas, have this day sold and delivered to the said W. R. Mullins, one bay horse colt, two years old, branded with a shoe on left shoulder; the title to which I shall forever warrant and defend against all claims.

His

" WILLIE + HESSE."

mark.

" Witness:　　　　　　　john davis.

" R. E. Mullins (JOHN DAVIS.)

" CORSICANA, September 3, 1883."

Mrs. Fannie Collins, the mother of the prosecuting witness, testified that she missed a sorrel mare she owned at the same time that the bay pony was stolen. Witness did not know who took her. She was returned to the pasture on the Wednesday of the next week. Willie Hesse is generally known throughout the neighborhood as an idiot, and his idiocy is so thoroughly developed that any one can readily detect it. The defendant owned a bay horse, and Mrs. Jetton owned a sorrel mare very much like the witness's mare. The defendant stayed about Mrs. Hesse's a great deal, and was with Willie Hesse much of his time. The only relationship between the defendant and the Hesses is that Willie Hesse's step-mother is the defendant's aunt. Defendant did not have the consent of witness to take either hers or her son's horse. The State closed.

William Jetton was the first witness for the defendant. He testified that he and the defendant were brothers. Witness's mother, at the time of the alleged theft, owned a sorrel mare very much like the one owned by Mrs. Collins. The defendant owned, and gener-

ally rode, a bay horse with a long mane. The defendant remained at home throughout the entire day succeeding the night of the alleged theft. On that day, Monday, witness met Burr Collins going to Waxahatchie. Burr inquired after Willie Hesse. In September, 1883, at Waxahatchie, the defendant was pointed out to R. E. Mullins by Joseph Hesse, in the presence of the witness. Mullins then said that he could not identify the defendant as the man who was with Willie Hesse when he bought the bay horse from Willie Hesse in Corsicana.

John Jetton, another of defendant's brothers, testified in his behalf that he, witness, went home about 9 o'clock on the night of Monday, the day succeeding the alleged theft, and found the defendant sleeping in his usual place. Defendant went to his usual work in the cotton patch early next morning, worked all of that day, stayed at home that night, and returned to his work on Wednesday morning. Rome Wheatley came to the witness on that day, Wednesday, and told him that a warrant had been issued for the arrest of the defendant upon the charge of stealing the Collins horses. Witness thereupon went to the cotton patch, informed the defendant of the charge against him, and advised him, if guilty, to leave the country. Defendant replied that he was not guilty, that he had had nothing to do with the horses, had done nothing to leave the country for, and would not leave. The defendant had ample opportunity to escape after being notified of the issuance of the warrant for his arrest, but refused to leave, and was arrested that evening at the house of Mrs. Kennedy, about two hundred and fifty yards from home.

R. G. Phillips, district clerk, testified for the defense that the defendant always made his mark to affidavits and other papers requiring his signature, giving as his reason therefor that he was unable to write.

The motion for new trial was supported by the affidavits of Joseph Hesse, Charles Howard, Mrs. Mollie Mervin, Doctor M. H. Olliver and T. H. Marcia, marked respectively exhibits A, B, C, D and E.

The affidavit of Joseph Hesse set out in substance that he was the father of William Hesse, a minor seventeen years old, who was of unsound mind by nature; that the said William stole a horse from W. M. Burgess in 1880, and traded him off, for which said horse the affiant paid; that the mental condition of the said William was such that he would steal anything he could get possession of; that it has been the constant care of the affiant to guard the said William to prevent his perpetration of theft and like offenses; that the said William was indicted for this same offense, which in-

dictment, at the last September term of court, was *nolle prosequied* by the prosecuting attorney by consent of the court, because of the said William's mental condition; that when said William was arrested for this theft, the affiant asked him where he got the horse, and he told affiant that he got him from Mrs. Collins, and that one John Davis was with him, and that said John Davis went with him to Corsicana when he sold the horse; that affiant often asked him, William, who was with him when he stole the said horse, and he always said it was John Davis, and that, after the sale of the said horse, the said John Davis went somewhere below Corsicana; that affiant at no time heard the said William say that the defendant was with him in the perpetration of the theft, but often heard him persistently deny it; that the said William lived with affiant about four hundred yards from and in full view of Mrs. Collins's place; that witness went to Corsicana and demanded of Mr. Mullins why he had traded for a horse with an idiotic minor; that Mullins replied that the authorities advised him that he could do so with safety if the boy was in the habit of trading horses; that affiant replied that he had never suffered the said William to trade, which fact was well known to his neighbors; that said Mullins, in September, 1883, in the presence of William Jetton, told witness that he did not know the defendant, the defendant being then pointed out to him; affiant was under subpœna to be present at this term of the court, and would have been present but for the following facts: Howard, a defense witness, told affiant that he would testify that he, Howard, went with defendant from near affiant's house to Ennis, a distance of six miles, on the evening of the alleged theft, and remained with defendant until 10 o'clock that night, when he left defendant near the house of Mrs. Mollie Mervin, who, in turn, told affiant that she would testify that said defendant came to her house about 10 o'clock on the night of the alleged theft, remained all night and until 1 o'clock in the evening of the next day, when he left, saying he was going home. The affiant knowing that, though the said Mrs. Mervin was under subpœna, she was too ill to be in attendance upon this trial, did not believe this trial would be had at this term, and for this reason he and the said Howard did not attend; that neither the affiant, Howard nor Mrs. Mervin had ever disobeyed their subpœnas. Affiant was informed and believed that defendant was at home at 8 o'clock on the night succeeding the alleged theft.

In their affidavits, the affiants Charles Howard and Mrs. Mollie Mervin assert their readiness to testify to the facts within their

knowledge, exactly as they are set out in the affidavit of Joseph Hesse. Both affirm that they had never previously disobeyed subpœna. Howard affirmed that he was absent because informed that the trial would not be had on account of the sickness of Mrs. Mervin, and that lady affirmed her sickness and confinement to bed as the cause of her absence. Doctor Olliver's affidavit certified that, on the day of the trial, Mrs. Mervin was confined to her bed with an attack of bilious fever.

T. H. Marcia's affidavit set out that he was a witness on the trial of this cause, and in his testimony stated that when the defendant passed his house on the morning after the alleged theft, he was leading a bay horse whose mane was not roached.

*Bradshaw & McKnight* and *W. L. Harding*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. It is true that appellant had obtained one continuance of his case at the September term, 1883, but that continuance was solely upon the ground of the sickness of his attorney.

In support of his motion for a new trial upon the ground that the court erred in overruling his application for a continuance, the affidavit of each of the absent witnesses for whom the continuance was sought is made an exhibit, and each of said witnesses swears that he, the witness, had been served with subpœna and had never disobeyed the subpœna before in this case; and they give the reasons why, in this instance, they failed to appear and testify to the facts to which they aver they would have testified if present. As exhibited in the record, we cannot say that the application for continuance was lacking in diligence. If in fact any diligence was wanting, the State, either at the time the application was submitted or when again raised on the motion for new trial, could have controverted the same. (Code Crim. Proc., art. 564; *Walker* v. *The State*, 13 Texas Ct. App., 619.) No effort was made in this direction by the prosecution.

There can be no question as to the materiality of the testimony as shown in the application, and we cannot say that it is not probably true. Taking this testimony in connection with the fact that appellant's identity and connection with the theft of the horses is proven by witnesses who had never known him, and who only saw the party with whom they identify him for but a short time, and it is apparent that the testimony of the absent witnesses to prove the

*alibi* was all-important. (See *Smythe alias Martin* v. *The State, ante,* p. 244.)

Because the court erred in overruling defendant's motion for new trial, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered December 10, 1884.] .